Brentwood Family Division
No. 2004-727

IN THE MATTER OF SONIA RAMADAN AND SAMER RAMADAN

Argued: January 11, 2006
Opinion Issued: February 14, 2006

*Tober Law Offices, P.A.*, of Portsmouth (*Stephen L. Tober* and *Tara C. Schoff* on the brief, and *Ms. Schoff* orally), for the petitioner.

*Coughlin, Rainboth, Murphy & Lown, P.A.*, of Portsmouth (*Timothy C. Coughlin* on the brief and orally), for the respondent.

DALIANIS, J. The respondent, Samer Ramadan, appeals an order of the Brentwood Family Division (*Taube*, J.) adopting the proposed divorce decree and uniform support order of the petitioner, Sonia Ramadan. We affirm.

The record supports the following facts. The parties were married in Tripoli, Lebanon on December 5, 1986. They have three children. Prior to their marriage, on November 27, 1986, the respondent and the petitioner, as represented by her father, entered into a "marriage contract" promising a deferred "dower" payment of 250,000 Lebanese liras. The respondent was, at the time, a resident of the United States, and the couple settled in Massachusetts shortly after they were married.

The parties remained in Massachusetts from 1986 to 1990, and thereafter lived in Texas from 1991 to 1992. In 1992, they moved to Lebanon and resided there until 1997. They moved to Egypt in 1998, and returned to the United States in 1999, settling in New Hampshire. The petitioner filed for divorce on October 14, 2003, asserting that irreconcilable differences had led to the irremediable breakdown of the marriage.

The respondent claims that on October 13, 2003—the day before the petitioner filed for divorce in New Hampshire—he initiated a divorce under Islamic law by declaring "I divorce you" three times in succession in the presence of the petitioner. The respondent also claims that he telephoned an attorney in Lebanon on the same day and declared, with two witnesses listening, that he had divorced his wife. On October 18, 2003, the respondent traveled to Lebanon to see his attorney and "sign the necessary papers."

The trial court issued an Order of Notice on October 30, 2003. The respondent returned to New Hampshire on December 12, 2003, and was

served in hand on the same day. On December 18, 2003, a religious magistrate in Lebanon issued a decree that the parties were divorced on October 13, 2003, pursuant to the respondent's repudiation of his wife. The respondent moved to dismiss the petition for divorce in New Hampshire, asserting that the trial court lacked jurisdiction over the divorce in light of the Lebanese decree.

On January 30, 2004, the trial court held a hearing on the respondent's motion to dismiss. The trial court, finding that "no valid judicial process was instituted by [the] Respondent in Lebanon prior to the date the Petitioner filed her Petition for Divorce," denied the respondent's motion on February 4, 2004, and entered a temporary decree awarding the petitioner sole legal custody and primary physical custody of the parties' children, monthly child support and alimony, and certain personal and real property. The temporary decree also prohibited the respondent from speaking negatively about the petitioner or referring to her "as a Muslim/Muslim woman" within the hearing of the children. The respondent thereafter filed motions to reconsider, to stay the temporary order, and to supplement the record. The trial court denied the motions.

The respondent returned to Lebanon in 2004 and, through his attorney, informed the trial court of his intent to ignore its orders because he claimed lack of subject matter jurisdiction. On August 20, 2004, a notice of conditional default was entered against the respondent for failure to answer interrogatories. After he failed to appear for a pre-trial conference on September 2, 2004, the trial court noted that the respondent had refused to participate in discovery and scheduled a final hearing for September 16, 2004. The respondent did not appear for the final hearing, and the trial court entered a divorce decree approving and incorporating the petitioner's proposed decree and uniform support order without amendment.

On appeal, the respondent raises the following issues: (1) that the trial court's refusal to dismiss the divorce petition for lack of subject matter jurisdiction was error; (2) that principles of comity required dismissal of the divorce petition; (3) that the trial court's refusal to consider additional documentary evidence of the Lebanese divorce decree was error; (4) that the trial court erred by adopting the petitioner's proposed divorce decree; (5) that the trial court decreed an inequitable property division without stating its reasoning; and (6) that the trial court's temporary order prohibiting the respondent from referring to his wife as a Muslim woman in the presence of their children was an unconstitutional abridgment of his rights. The petitioner claims that the respondent continues to refuse to abide by the trial court's temporary order and urges this court to dismiss his appeal.

We first address the petitioner's request that we dismiss the respondent's appeal because he refused to comply with the trial court's orders and was accordingly found to be in contempt. We have held:

> [I]n limited circumstances, an appeal in a civil case may be dismissed if the appellant has failed to comply with an order of the trial court that relates directly to the issues raised by the appellant on appeal, and the issue of contempt is not being appealed. When a party has consciously and deliberately disregarded a trial court order that has direct bearing upon an issue for which that party seeks relief, we may exercise our discretion to dismiss.

*DeMauro v. DeMauro*, 147 N.H. 478, 482 (2002). In the instant case, the respondent has appealed the trial court's adoption of the petitioner's proposed divorce decree, an issue to which the orders of the trial court, which he ignored, is directly related. However, the respondent also appeals the issue of subject matter jurisdiction, which he has contested throughout the underlying litigation, as well as the trial court's refusal to consider evidence of the Lebanese divorce decree's validity. Because these latter issues are not directly related to the ignored orders of the trial court, we decline to dismiss the respondent's entire appeal.

The respondent first argues that the trial court lacked jurisdiction over the divorce because the parties entered into a marriage contract in Lebanon in 1986 and, moreover, a Lebanese court decreed the parties divorced as of October 13, 2003, the day before the petitioner filed for divorce in New Hampshire. We find the respondent's arguments unconvincing.

■ Jurisdiction over parties to a divorce action in New Hampshire "exists . . . where both parties were domiciled in the state when the action was commenced." RSA 458:5, I (2004). Jurisdiction over the cause of a divorce action "exists when it wholly arose or accrued while the plaintiff was domiciled in the state." RSA 458:6 (2004); *see Woodruff v. Woodruff*, 114 N.H. 365, 36667 (1974). A review of the record confirms that the parties were domiciled in New Hampshire when the divorce action was commenced on October 14, 2003, and had been so for at least three years. As such, the trial court properly exercised personal jurisdiction over the parties and subject matter jurisdiction over the cause for divorce. *Cf. Vazifdar v. Vazifdar*, 130 N.H. 694, 696 (1988) (where cause of action arose in New Hampshire, parties' children were in New Hampshire, and only assets which plaintiff sought to retain were located in New Hampshire, trial court had compelling interest in retaining jurisdiction).

Though we conclude that the trial court properly exercised jurisdiction over the parties' divorce, this alone would not preclude another forum from doing the same. *See Stankunas v. Stankunas*, 133 N.H. 643, 646 (1990). RSA chapter 459 (2004), however, establishes the principle that "a divorce obtained in another jurisdiction shall be of no force or effect in this state ... if both parties to the marriage were domiciled in this state at the time the proceeding for the divorce was commenced." RSA 459:1 (2004).

In matters of statutory interpretation, we are the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *In the Matter of Donovan & Donovan*, 152 N.H. 55, 58 (2005). When examining the language of a statute, we ascribe the plain and ordinary meanings to the words used. *Soraghan v. Mt. Cranmore Ski Resort*, 152 N.H. 399, 401 (2005); *see* RSA 21:2 (2000). The term "jurisdiction," as it is used in the context of RSA 459:1, is ordinarily defined as "the limits or territory within which any particular power may be exercised." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1227 (unabridged ed. 2002). We believe, therefore, that RSA 459:1 is to be construed broadly, encompassing not only jurisdictions within the United States, but also those of sovereign states existing outside of our national borders, including Lebanon.

Since the parties had been domiciled in New Hampshire for at least three years when the divorce action was commenced, the Lebanese divorce decree proffered by the respondent can have no force or effect in New Hampshire under RSA 459:1, regardless of its validity in Lebanon. As such, we conclude that the trial court did not err when it refused to dismiss the divorce petition for lack of subject matter jurisdiction.

Though we believe that RSA 459:1 precludes the Lebanese decree from having force or effect in New Hampshire, we take note of the respondent's argument that principles of comity mandated the dismissal of the divorce petition by the trial court. We have recognized foreign divorce decrees as a matter of comity. *Stankunas*, 133 N.H. at 646-47. Comity, however, is a discretionary doctrine that will not be applied if it violates a strong public policy of the forum state, or if it leaves the court in a position where it is unable to render complete justice. *Vazifdar*, 130 N.H. at 697.

In *Vazifdar*, the defendant in a New Hampshire divorce action claimed that, as a matter of comity, the trial court should have deferred to the jurisdiction of a Parsi court in India for the determination of the parties' marital status because it was under Parsi law that they had been married. *Id.* at 696-97. The defendant was residing in India, having returned and remained there after his family settled in New Hampshire. *Id.* at 695. We

considered the hardship that would befall the plaintiff, who had resided in New Hampshire with the parties' children for approximately ten years, noting that she would have to seek partial relief in India, even though New Hampshire could determine all the issues presented, and "bear the burdensome costs of traveling to India, solely for the defendant's convenience, since all evidence and witnesses [were] here in New Hampshire." *Id.* at 697. In light of the discretionary nature of the comity doctrine, we found no unsustainable exercise of discretion in the trial court's decision to retain jurisdiction over the divorce. *Id.*

In the instant case, the trial court properly exercised jurisdiction over the parties and the subject matter of the divorce pursuant to RSA 458:5 and RSA 458:6. Much like the plaintiff in *Vazifdar*, the petitioner, who had resided in New Hampshire with the respondent and their children for at least three years at the time the divorce actions were commenced, would be subject to considerable hardship in seeking relief in Lebanon, when all of the issues presented could be determined in New Hampshire. The petitioner would be forced to bear the burdensome cost of traveling to Lebanon, and the record suggests that she and her children were left with minimal financial resources after the respondent moved there.

Furthermore, we believe that public policy considerations support the trial court's decision to retain subject matter jurisdiction. "[C]ourts of a foreign country have no jurisdiction to dissolve the marriage of parties not domiciled in such foreign country at the commencement of the proceedings for divorce," and recognizing an *ex parte* divorce obtained in a foreign nation where neither party is domiciled "would frustrate and make vain all State laws regulating and limiting divorce." *Slessinger v. Secretary of Health & Human Services*, 835 F.2d 937, 942-43 (1st Cir. 1987) (quotation omitted). We believe that, in *Slessinger*, the First Circuit articulated a sound public policy that applies in New Hampshire.

█ Therefore, even if RSA 459:1 did not settle this issue, we would hold, as we did in *Vazifdar*, that the trial court did not engage in an unsustainable exercise of discretion by declining to defer to the jurisdiction of a Lebanese court as a matter of comity.

The respondent next argues that the trial court erred by refusing to consider additional documentary evidence of the validity of the Lebanese divorce decree. Because the validity of the Lebanese divorce decree proffered by the respondent is irrelevant in light of RSA 459:1, we conclude that the trial court did not err by refusing to consider additional evidence on that issue.

The respondent further contends that the trial court divided the parties' marital assets and custodial rights in an inequitable fashion, and erred by

failing to articulate specific reasons for doing so. The trial court has broad discretion in determining matters of property distribution and alimony when fashioning a divorce decree. *See In the Matter of Gronvaldt & Gronvaldt*, 150 N.H. 551, 554 (2004). Absent an unsustainable exercise of discretion, we will not overturn its ruling or set aside its factual findings. *Id.*

The petitioner submitted a proposed permanent decree at the final hearing on September 16, 2004, which heavily favored her in terms of distribution of marital assets, custody, support, and other matters pertaining to the divorce. When the respondent failed to appear for the final hearing or, as he concedes, to submit a proposed decree of his own, the trial court adopted the petitioner's proposed decree as the permanent decree of divorce. The respondent now asserts that the trial court, knowing that the respondent refused to recognize its jurisdiction or participate in the litigation, "should have . . . devised a way to discern some salient facts regarding the parties' marriage" or allowed an interlocutory appeal to this court before entering a "patently inequitable" decree. The respondent cites no authority, however, placing such a burden upon a court faced with a litigant who refuses either to participate in its proceedings or to comply with its orders.

■ A defendant in a divorce proceeding cannot argue that the disposition of marital property is unequal when the defendant has effectively prevented the trial court from being able to determine whether the disposition was in fact equal or not. *DeMauro*, 147 N.H. at 483. The respondent deliberately ignored the trial court's orders, failed to answer interrogatories, refused to participate in discovery, declined to submit a proposed permanent divorce decree to the trial court, and did not appear for the final hearing. He was afforded ample opportunity to provide the trial court with information that could have resulted in a final divorce decree striking a more even balance between the interests of the parties. The respondent cannot now, on appeal, challenge the precise outcome that he could have prevented. *See id.*; *cf. Bursey v. Bursey*, 145 N.H. 283, 285-86 (2000) (trial court did not unsustainably exercise its discretion when it entered divorce decree providing for unequal distribution of property without hearing evidence of husband's financial condition, where husband previously failed to answer interrogatories about that very subject). Accordingly, we conclude that the defendant has forfeited the right to appellate review of this issue. *See DeMauro*, 147 N.H. at 483.

Though we need not reach the issue in light of our conclusion above, we note the respondent's claim that the trial court was required by RSA 458:16-a (2004) to specify written reasons for the ordered division of

property. The respondent concedes, however, that his refusal to participate in the judicial proceedings left the trial court without evidence favoring his interests. With nothing to weigh the petitioner's proposed final decree against, the trial court had little choice but to adopt it without modification. Thus, were we to review this issue on the merits, we would conclude that the trial court's final decree was not an unsustainable exercise of discretion.

The respondent next challenges the provision in the trial court's February 2004 temporary order stating, in part, that he "shall not speak about the Petitioner as a Muslim/Muslim woman to the children or within hearing of the children." The respondent asserts that this portion of the order comprises an "unconstitutional abridgment of his rights," specifically his "constitutionally protected right to parent" and his "free speech rights."

Assuming without deciding that the portion of the trial court's temporary order prohibiting the respondent from referring to his wife as a "Muslim" or "Muslim woman" in the presence of their children was an impermissible prior restraint on his freedom of speech, the offending language was not repeated in the permanent divorce decree. As we now affirm that decree, this issue is moot.

The petitioner requests that she be awarded attorney's fees and costs pursuant to New Hampshire Supreme Court Rule 23, which permits this court, "[i]n the interest of justice in extraordinary cases, but not as a matter of right," to "award attorney's fees related to an appeal to a prevailing party if the appeal is deemed . . . to have been frivolous or in bad faith." The respondent has contested subject matter jurisdiction from a point early in the divorce litigation. On June 24, 2004, he, through counsel, informed the trial court of his intention to file a motion seeking permission to pursue an interlocutory appeal with this court regarding the issue of subject matter jurisdiction, though there is no evidence in the record that such a motion was ever submitted. We find nothing in the record suggesting that the respondent acted frivolously or in bad faith, and the interests of justice do not merit an award of attorney's fees. As such, we decline the petitioner's request for attorney's fees and costs pursuant to New Hampshire Supreme Court Rule 23.

*Affirmed.*

DUGGAN and GALWAY, JJ., concurred.