Merrimack County Probate Court
No. 2005-005

IN RE GUARDIANSHIP OF THEODORE KAPITULA

Submitted: January 12, 2006
Opinion Issued: May 17, 2006

*Kelly A. Ayotte*, attorney general (*Lynmarie C. Cusack*, assistant attorney general, on the brief), for the State.

*Soltani/Mosca P.L.L.C.*, of Epsom (*Edward C. Mosca* on the brief), for the respondent, Theodore Kapitula.

BRODERICK, C.J. This appeal arises from an order of the Merrimack County Probate Court (*Hampe*, J.) appointing a guardian over the person of the respondent, Theodore Kapitula. We affirm.

The record supports the following. The respondent was involuntarily admitted to the New Hampshire Hospital in August 2004 for an eighteen-month period. In November 2004, the New Hampshire Hospital filed a petition for guardianship. At the hearing on the petition, the probate court heard testimony from Tracey Parks, R.N., and David Corson, M.D., the respondent's primary nurse and attending psychiatrist, respectively, from July to November 2004; and from the respondent. On December 7, 2004, the probate court found, pursuant to RSA 464-A:9, III(a)-(d) (2004), that the respondent was incapacitated, and appointed the office of public guardian as guardian over his person. This appeal followed.

The respondent contends that the probate court erred because: (1) it employed "rote recitation" of RSA 464-A:9, III(a)-(d) in its guardianship order and thus failed to satisfy that statute's requirements that the probate court "make the specific findings enumerated by those statutory provisions"; (2) it ordered a guardianship over the person based upon findings that were not expressly stated to be beyond a reasonable doubt; and (3) it "placed too much weight on the petitioner's witnesses and not enough weight on [his] testimony." With regard to his first two issues, the

respondent has made no argument that the evidence presented was either insufficient to support the probate court findings, or insufficient to support those findings beyond a reasonable doubt. These two issues involve the language of RSA 464-A:9, III.

> Because resolution of [these issues] requires statutory interpretation, which is a matter of law, we review the trial court's decision *de novo*. In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. We begin our analysis by looking to the language of the statute itself. If the language is plain and unambiguous, then we need not look beyond it for further indication of legislative intent.

*State v. Merriam*, 150 N.H. 548, 549 (2004) (citations omitted). Further, in construing a statute, we will neither consider what the legislature might have said nor add words that it did not see fit to include. *In re Juvenile 2004-789*, 153 N.H. 332, 336 (2006).

The statute at issue reads, in pertinent part:

> I. The court, at a hearing convened under this chapter, shall:
> (a) Inquire into the nature and extent of the functional limitations of the proposed ward; and
> (b) Ascertain his or her capacity to care for himself or herself or his or her estate.

> II. If it is determined that the proposed ward possesses the capacity to care for himself or his estate, the court shall dismiss the petition.

> III. Alternatively, the court may appoint a guardian of the person and estate, or the person or the estate, as requested in the petition and confer specific powers of guardianship on the proposed guardian, or appoint co-guardians, one of the person and one of the estate, after finding in the record based on evidence beyond a reasonable doubt that:
> (a) The person for whom a guardian is to be appointed is incapacitated; and
> (b) The guardianship is necessary as a means of providing continuing care, supervision, and rehabilitation of the individual, or the management of the property and financial affairs of the incapacitated person; and
> (c) There are no available alternative resources which are suitable with respect to the incapacitated person's welfare,

safety, and rehabilitation or the prudent management of his or her property and financial affairs; and

(d) The guardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the civil rights and liberties of the proposed ward.

RSA 464-A:9. The probate court order reads, in pertinent part:

After a hearing held at this court, and upon due consideration of the petition for guardianship filed by ... New Hampshire Hospital and all the evidence proffered thereon, the court renders the following findings as required by RSA 464-A:9, III(a)-(d), namely:

(a) ... Theodore Kapitula ("ward") is incapacitated.

(b) Guardianship is necessary as a means of providing for the ward's continuing care, supervision, and rehabilitation and for the prudent management of the ward's property and financial affairs.

(c) There are no available alternative resources which are suitable with respect to the ward's welfare, safety or rehabilitation and for the prudent management of the ward's property and financial affairs.

(d) Guardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the ward's civil rights and liberties.

(Emphasis omitted.)

██ The respondent contends that RSA 464-A:9 requires the court to make "findings of basic or essential facts sufficient to support its ultimate determinations" and "an express 'beyond a reasonable doubt' finding ... [because the statute] states that such a finding is to be made 'in the record.'" We disagree. The statute requires that the probate court hold a hearing, at which the court must inquire into the nature and extent of the functional limitations of the proposed ward, and ascertain the proposed ward's capacity to care for himself. That was done. The probate court may appoint a guardian over the person if it makes the findings set forth in paragraph III (a) through (d). These findings must be in the record, and must have been based upon evidence supporting them beyond a reasonable doubt. That, too, was done. Nothing in the plain language of the statute requires that the probate court provide written illumination of all facts used in making its ultimate findings with regard to paragraph III (a) through (d). Nor does the statute require that the probate court make an express written finding that its ultimate determination was proved beyond

a reasonable doubt. Instead, the statutory phrase "in the record" refers to the ultimate findings of paragraph III (a) through (d), and not to a recitation of the level of proof.

■ The respondent points to RSA 491:15 as supporting his argument. RSA 491:15 (1997) pertains to findings in the superior court and states:

> The court or justice trying causes under RSA 491:13 and 491:14 shall, if either party requests it, give his decision in writing, stating the facts found and his rulings of law, which shall be filed and recorded.

Similarly, RSA 567-A:4 (1997), which governs probate court proceedings, states in pertinent part:

> The judge of probate by whom a decree, order, appointment, grant or denial was made shall report the material facts found by him and his rulings of law, on request of any party entitled to appeal therefrom made before the entry of such decision. Unless otherwise ordered for good cause shown, all requests for findings and rulings and written memorandum of law must be submitted to the judge of probate at the close of the evidence.

In the instant case, nothing in the record indicates that either party made a request for findings of fact and rulings of law. As the legislature has provided the specific mechanism by which the respondent could have obtained written findings of the material facts supporting the probate court's ultimate determination concerning the need for a guardianship, we decline to read such a requirement into RSA 464-A:9. *Cf.* RSA 541-A:35 (1997 & Supp. 2005) (requiring administrative body to provide "concise and explicit statement of the underlying facts supporting the findings").

■ The respondent next cites *State v. Radziewicz*, 122 N.H. 205, 211 (1982), in support of his argument that the language of RSA 464-A:9 "requires an express 'beyond a reasonable doubt' finding." The respondent is correct that in *Radziewicz*, we instructed trial courts to enter an express finding that the oral or written waiver of a defendant's *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), and any confession was voluntary beyond a reasonable doubt. *Radziewicz*, 122 N.H. at 211. We made clear in *Radziewicz*, however, that this was a procedural requirement that we "imposed to insure that records on appeal before us disclose that the trial court has applied the proper standard of proof." *Id.* RSA 464-A:9 explicitly sets forth the proper standard of proof and mandates that the probate court make its findings based upon that standard. Further, in the absence of specific findings, a court is presumed

to have made all findings necessary to support its decree. *In re Jonathan T.*, 148 N.H. 296, 304 (2002). Thus, unlike the situation in *Radziewicz*, here there is no reason for us to impose the additional procedural requirement that the probate court expressly recite that its findings were made based upon evidence beyond a reasonable doubt. We leave it to the legislature to determine whether the statute, as interpreted here, should be amended, "as we will not put words into the statute where the legislature has chosen not to do so." *In re Juvenile 2004-789*, 153 N.H. at 335.

■ The respondent notes that the probate court, through the use of a "boilerplate form," also found that there were no suitable alternative resources for, and that guardianship was necessary for, the prudent management of his property and financial affairs. He argues that such findings, in the absence of any testimony concerning his property and financial affairs, suggest that the purposes of RSA chapter 464-A were not being effectuated here. The inclusion of such superfluous language in the order for guardianship does not constitute reversible error in this case. The record is clear that neither party elicited testimony concerning the respondent's property or financial affairs. New Hampshire Hospital clearly sought a guardianship over the person in its petition for guardianship; the probate court order is captioned as a "GUARDIAN OVER THE PERSON ORDER"; the order states that the probate court appoints the office of public guardian as "guardian over the person of the ward"; and the notice to the ward clearly indicates the same. However, we urge the probate courts to excise any unnecessary "form" language from their guardianship orders that could cause such confusion in the future.

Finally, the respondent contends that the probate court "placed too much weight on the petitioner's witnesses and not enough weight on·[his] testimony." We disagree. "The findings of fact of the judge of probate are final unless they are so plainly erroneous that such findings could not be reasonably made." RSA 567-A:4. Further, and as the respondent recognizes in his brief, we defer to a trial court's judgment on such issues as resolving conflicts in testimony, measuring the credibility of witnesses, and determining the weight to be given to testimony. *McCabe v. Arcidy*, 138 N.H. 20, 24 (1993). At the hearing on the petition for guardianship, the probate court heard testimony from the respondent, his primary nurse, and his attending psychiatrist. Both of the latter had treated the respondent from his admission to the New Hampshire Hospital in July 2004 until late November 2004. All three individuals were subject to cross-examination. The respondent contends that it is "arguable that the Probate Court simply ignored [his testimony] that [he] had the potential to make sufficiently informed health care decisions." It is, however, "within

the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented." *Cook v. Sullivan*, 149 N.H. 774, 780 (2003). Based upon our review of the record, we cannot find that no reasonable person could have come to the conclusion that the probate court did in this case. *See Reid v. Warden, N.H. State Prison*, 139 N.H. 530, 532 (1995).

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.