Coos County Probate Court
No. 2006-104

IN RE GUARDIANSHIP OF R.A.

Argued: February 22, 2007
Opinion Issued: March 20, 2007

*Tarbell Professional Association*, of Concord (*Shane R. Stewart* and *Friedrich K. Moeckel* on the brief, and *Mr. Stewart* orally), for the petitioner.

*John D. MacIntosh, P.C.*, of Concord (*John D. MacIntosh* on the brief and orally), for the guardian.

GALWAY, J. The petitioner, R.A., appeals a decision of the Coos County Probate Court (*Hampe*, J.) authorizing his guardian to admit him to New Hampshire Hospital and consent to his medication. We affirm in part.

The record supports the following. In January 1998, the probate court appointed the Office of Public Guardian (OPG) as guardian over R.A. Michael Feinstein, an employee of OPG, personally served as R.A.'s guardian beginning in late 1999. On November 21, 2005, Feinstein admitted R.A. to New Hampshire Hospital's psychiatric facility, and also

authorized medication for him. *See* RSA 464-A:25 (2004) (amended 2005). On November 23, 2005, Feinstein notified the probate court of R.A.'s admission. R.A. objected to his admission, and the probate court held a hearing on January 12, 2006. After the hearing, the probate court authorized R.A.'s guardian to admit him to New Hampshire Hospital for a period not to exceed eight months and to consent to his medication.

R.A. appeals, arguing that, on November 21, 2005, his guardian did not have authority to admit him to New Hampshire Hospital or consent to his medication. This authority had ended by that time, R.A. argues, because RSA 464-A:25, I(c) required that the guardian's authority be reviewed by the court every five years, which had not been done. Once five years elapsed with no review of the guardian's authority, R.A. argues, the authority terminated. In response, OPG argues that it is RSA 464-A:25, I(a), not RSA 464-A:25, I(c), that governs a guardian's admission of a ward to New Hampshire Hospital, and subparagraph (a) does not require a five-year review of the guardian's authority.

Resolution of the issue before us requires statutory interpretation, which is a matter of law that we review *de novo*. *In re Guardianship of Kapitula*, 153 N.H. 492, 494 (2006). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* We begin our analysis by looking to the language of the statute itself. *Id.* If the language is plain and unambiguous, then we need not look beyond it for further indication of legislative intent. *Id.*

The version of RSA 464-A:25, I, that was in effect on November 21, 2005, provided, in pertinent part:

I. A guardian of an incapacitated person has the following powers and duties, except as modified by order of the court:

> (a) To the extent that it is consistent with the terms of any order by a court of competent jurisdiction relating to detention or commitment of the ward, the guardian shall be entitled to custody of the ward and may establish the ward's place of abode within or without this state. Admission to a state institution shall be in accordance with the following:

> . . . .

> (2) A guardian may admit a ward to a state institution without prior approval of the probate court upon written certification by a . . . psychiatrist licensed in the state of New Hampshire, that the placement is in the ward's best interest and is the least restrictive placement available. Within 36

hours ... of such an admission of a ward to a state institution, the guardian shall submit to the probate court notice of the admission and the reasons therefor .... The court shall promptly appoint counsel for the ward .... The court·shall also provide the ward a notice stating that the ward has the right to appointed counsel, the right to oppose the admission by the guardian, and the right to a hearing and to present evidence at that hearing.

....

(c) A guardian of the person may give any necessary consent or approval to enable the ward to receive medical or other professional care, counsel, treatment, or service or may withhold consent for a specific treatment, provided that the court has previously authorized the guardian to have this authority, which authority shall be reviewed by the court every 5 years.

RSA 464-A:25, I.

We begin by addressing whether OPG had the authority to admit R.A. to New Hampshire Hospital on November 21, 2005. Based upon the plain language of RSA 464-A:25, I, it is clear that subparagraph (a) authorizes a guardian to admit a ward to New Hampshire Hospital. R.A. does not contend that Feinstein failed to comply with the requirements in subparagraph (a). Instead, he argues that Feinstein failed to comply with the five-year-review requirement present in subparagraph (c), as it read in November 2005.

Subparagraph (c), however, does not authorize the admission of a ward to a hospital. Subparagraph (c) authorizes a guardian to give "consent or approval to enable the ward to receive medical or other professional care ...." It is this authority "which ... shall be reviewed by the court every 5 years." Nothing in RSA 464-A:25 conditions the guardian's authority to admit the ward to New Hampshire Hospital upon court review every five years. Accordingly, we decline to adopt R.A.'s interpretation of the version of RSA 464-A:25, I, in effect in November of 2005.

We next address R.A.'s argument that his guardian's authority to consent to medical treatment had expired by November 21, 2005. At oral argument, both parties addressed whether the issue of Feinstein's authority to consent to R.A.'s medical treatment on November 21, 2005, is moot. The doctrine of mootness is designed to avoid deciding issues that "have become academic or dead." *Sullivan v. Town of Hampton Bd. of Selectmen*, 153 N.H. 690, 692 (2006) (quotation omitted). The question of

mootness is not subject to rigid rules, but is regarded as one of convenience and discretion. *Id.* A decision upon the merits may be justified where there is a pressing public interest involved or future litigation may be avoided. *Id.*

If the version of RSA 464-A:25, I(c) that was in effect on November 21, 2005, were still in effect today, we might conclude that resolving whether Feinstein had the authority to consent to R.A.'s medical care on that date could prevent future litigation. RSA 464-A:25 was amended, however, effective January 1, 2006. As amended, RSA 424-A:25, I(c) (Supp. 2006) reads, in its entirety: "A guardian shall file an annual report with the probate court, unless the court finds that such report is not necessary." RSA 424-A:25, I(d) (Supp. 2006) reads, in pertinent part:

> A guardian of the person may give any necessary consent or approval to enable the ward to receive medical or other professional care, counsel, treatment, or service or may withhold consent for a specific treatment, provided, that the court has previously authorized the guardian to have this authority, *which authority shall be reviewed by the court as part of its review of the guardian's annual report.*

(Emphasis added.) Thus, the amendment changed the period to review a guardian's authority to consent to a ward's medical care from every five years to every year, and added that such review would occur as part of the court's review of the guardian's annual report. Due to this change, even if we assume that OPG's authority to consent to the ward's medical treatment expired after five years because the probate court had not reviewed it, that would have little bearing on the authority of guardians today. Even if we were to so construe the former RSA 464-A:25, I(c), it does not necessarily follow that we would construe the current version in a similar manner. Moreover, it is undisputed that Feinstein submitted the annual report required by the current version of RSA 464-A:25, I(c) to the probate court in April 2006. Thus, we have no reason to consider at this time what effect, if any, a failure to obtain the annual review required by the current RSA 464-A:25, I(d) would have upon a guardian's authority to give consent for medical treatment. Because whether Feinstein was authorized to make medical decisions for R.A. in November 2005 will have no bearing on whether Feinstein, or other guardians, currently have such authority, we conclude that this issue is moot.

*Affirmed in part; moot in part.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.