Salem Family Division
No. 2006-518

IN THE MATTER OF CHRISTINE COSTA AND MICHAEL L. COSTA

Argued: April 17, 2007
Opinion Issued: October 18, 2007

*Shanelaris & Schirch, PLLC*, of Nashua (*Jane M. Schirch* on the brief and orally), for the petitioner.

*Linda A. Theroux*, of Merrimack, by brief and orally, for the respondent.

BRODERICK, C.J. The respondent, Michael L. Costa, appeals from the final divorce decree recommended by a Marital Master (*DalPra*, M.) and adopted by the Salem Family Division (*Korbey*, J.). He makes numerous claims of error with respect to the trial court's division of marital assets. We affirm in part, vacate in part, and remand.

## I

The following facts were either found by the trial court or are supported by the record. The petitioner, Christine Costa, married the respondent in August 1992. They have two children, born in 1993 and 1999. The respondent has an associate's degree, and has been employed by the Massachusetts Water Resource Authority (MWRA) since 1987. The petitioner is not a college graduate, and was employed by various banks throughout the parties' marriage.

The parties separated in November 2004, and the petitioner filed for a fault-based divorce shortly thereafter. She alleged that her husband had committed adultery and treated her with "extreme cruelty." *See* RSA 458:7 (2004). However, after a four-day trial, the master "[did] not find . . . that adultery was the primary cause of the breakdown of the marriage." Rather, the master found it "abundantly clear" that the parties' "lack of communication and cooperation" had led to their separation. As a result, he recommended entry of a divorce on the ground of irreconcilable differences. *See* RSA 458:7-a (Supp. 2006).

Despite declining to assign fault in the breakdown of the parties' marriage, the master recommended an unequal division of the parties' marital assets:

> The recommended property division shall result [in] a greater than equal portion of the marital estate awarded to the Petitioner for the following reasons: she shall be required to provide suitable housing for the children; the Respondent's ability to acquire capital assets is greater than the Petitioner's; [and] the Respondent's current and future earning capacity is greater than the Petitioner's.

The master's support calculations reveal that at the time of the divorce, the petitioner earned $48,000 annually, while the respondent earned $70,800. The petitioner was awarded primary physical custody of the parties' children, while the respondent was ordered to pay $284 weekly in child support, or approximately $14,800 annually.

The petitioner was awarded title to the marital home, valued at $300,000, but was required to assume sole responsibility for the mortgage on the property, which had an outstanding balance of $234,000. She was also ordered to discharge a $15,000 debt owed by the parties to her brother. The petitioner was awarded the parties' 2001 Toyota Camry, valued at approximately $10,000, but subject to a loan balance of approximately $3,700, for which she was solely responsible.

The petitioner was also awarded one-half of the respondent's retirement savings account with the MWRA, "valued as of April 1, 2006." The master made no finding as to the account's actual value. The record reveals only that the respondent had accumulated $67,526.97 in his retirement account as of January 13, 2006. The respondent, who was forty-two years old at the time of trial, had funded his retirement account through mandatory weekly payroll deductions since 1987. The petitioner was ordered to prepare a qualified domestic relations order to effectuate a transfer of her ordered interest in the account's funds.

The master awarded the respondent a 1997 Toyota Tacoma, which his financial affidavit valued at $6,230. He was also awarded a 1968 GTO automobile which the master found to have "minimal value," as well as some sports memorabilia, a comic book collection, and a large-screen television. The petitioner retained all other furniture and personal property. Finally, the master awarded the parties "their respective checking and/or savings bank accounts ... and the like ... as shown on their individual financial affidavits filed with the court."

On appeal, the respondent argues that the trial court erred when it: (1) awarded all the equity in the marital home to the petitioner; (2) ordered him to continue making weekly payments on the 2001 Toyota Camry for sixty days after entry of the final divorce decree, and until the petitioner refinanced the vehicle in her own name; (3) failed to award him certain items of personal Property; (4) awarded one-half of his retirement savings account to the petitioner without utilizing the formula set forth by this court in *Hodgins v. Hodgins*, 126 N.H. 711, 715-16 (1985), *superseded on other grounds by* RSA 458:16-a, I (1992), and without addressing survivorship rights to the account; (5) ordered him to "become current" on all obligations imposed by temporary orders issued at the outset of the parties' divorce; and (6) failed to address the petitioner's alleged unauthorized depletion of a joint bank account after the parties' separation. We address each issue in turn.

II

The trial court is afforded broad discretion in determining matters of property distribution when fashioning a final divorce decree. *In the Matter of Ramadan & Ramadan*, 153 N.H. 226, 232 (2006). We will not overturn a trial court's decision on these matters absent an unsustainable exercise of discretion, *id.*, or an error of law, *In the Matter of Letendre & Letendre*, 149 N.H. 31, 34 (2002).

## III

The respondent first argues that the master erred by awarding "almost the entire marital estate" to the petitioner absent a finding of fault against him, "and without articulating any specific findings and rulings to justify such an order." He takes particular exception to the award of all the equity in the parties' marital home to the petitioner, along with two months' worth of payments on the Toyota Camry following entry of the final divorce decree, and all personal property not specifically disposed of by the decree. With regard to this last item, the respondent challenges the trial court's summary denial of his post-decree motion for reconsideration, which sought a revised award of personal items such as tools, pictures, and clothing left in the marital home.

■ "In a divorce proceeding, marital property is not to be divided by some mechanical formula but in a manner deemed 'just' based upon the evidence presented and the equities of the case." *Letendre*, 149 N.H. at 35. Under RSA 458:16-a, II (2004), an equal division of property is presumed equitable unless the trial court decides otherwise after considering one or more of the factors designated in the statute. *Id.* "Under the statute, the court need not consider all factors or give them equal weight." *In the Matter of Crowe & Crowe*, 148 N.H. 218, 221 (2002). RSA 458:16-a, IV (2004), in turn, requires the trial court to "specify written reasons for the division of property which it orders."

Initially, we disagree with the respondent's characterization of the master's award to the petitioner. Setting aside the proper division of the respondent's pension, which we address later, the record reveals that the petitioner received some $310,000 out of approximately $320,000 in divisible assets. Notably, however, the record also reveals that the petitioner was ordered to assume approximately $252,000 in debt that might otherwise have been assignable in whole or in part to the respondent. This debt allocation substantially reduced the value of the petitioner's award.

Moreover, the master appropriately referenced several factors listed in RSA 458:16-a to support his decision. He cited the petitioner's need as the custodial parent to own and occupy the marital home, the respondent's historically higher income, and the respondent's greater ability to acquire capital assets. *See* RSA 458:16-a, II(b)-(e). Specifically, the master emphasized that the petitioner "is and always has been" the primary caretaker of the parties' children, and that the respondent had often neglected to take the children during his designated visitation periods. The master also noted the respondent's long-term employment with the MWRA. The petitioner, by contrast, had recently lost her job, had changed

jobs several times throughout the parties' marriage, and lacked higher education, decreasing her chances of securing a better-paying position with comprehensive benefits.

■ Given this record, we conclude that the master made sufficient findings to justify an unequal apportionment of the parties' marital assets favoring the petitioner. Accordingly, since "[a] trial court is not precluded from awarding a particular asset in its entirety to one party," *Letendre*, 149 N.H. at 36, we conclude that it was within the trial court's discretion to award the petitioner the equity in the parties' marital home. Furthermore, we find no error in the trial court's award of household items of apparently *de minimus* value to the petitioner, or in its extension of the respondent's obligation to make payments on the Toyota Camry for two months after entry of the final decree.

We note the respondent's representation in his brief that fifty dollars continued to be deducted from his paycheck each week to pay for the Toyota Camry during the pendency of this appeal. On remand, the trial court shall evaluate this claim, and credit the respondent for any payments made in excess of those mandated by the final decree.

IV

The respondent next asserts that the trial court erred because it failed to employ the *Hodgins* formula when dividing his retirement savings. *See Hodgins*, 126 N.H. at 715-16. He principally objects to the court's inclusion of his savings accrued prior to the parties' marriage, and after the petitioner filed for divorce, in its award. His arguments necessitate further analysis of the nature of the MWRA retirement system.

The MWRA is a public entity, and its employees' retirement benefits are governed by Massachusetts law. *See generally* Mass. Gen. Laws Ann. ch. 32, §§ 1-28 (West 2001 & Supp. 2007). The "retirement allowance" paid to Massachusetts public employees is set by a formula weighing an employee's age at retirement, length of creditable service, and salary. Mass. Gen. Laws Ann. ch. 32, § 5(2)(a). The allowance consists of two parts—an annuity and a pension. Mass. Gen. Laws Ann. ch. 32, § 1. The part of the "retirement allowance" which is based upon accumulated employee paycheck deductions is the annuity. *Id.* The governmental employer makes up the difference between what is provided by the annuity and the total "retirement allowance." This difference is the pension. *Id.*

This retirement system has traits of both a defined contribution plan and a defined benefit plan. *See In the Matter of Watterworth & Watterworth*, 149 N.H. 442, 452 (2003). On the one hand, the respondent's

existing retirement savings entail an annuity funded by his paycheck deductions, and the interest they have generated. This annuity, which has an ascertainable present value, would by itself constitute a defined contribution plan. On the other hand, however, the respondent's total "retirement allowance" will also include a pension, the value of which is not presently ascertainable because it depends upon the date of his retirement.

We have not yet had occasion to decide the proper method of dividing the type of hybrid retirement savings presented by this case—namely, retirement savings from paycheck withdrawals with an ascertainable present value, which will eventually be combined with a pension of unknown contingent value. *Cf. id.* (present and contingent pension values ascertainable); *Hodgins*, 126 N.H. at 715-16 (neither present nor contingent pension values ascertainable). Nevertheless, we observe that Massachusetts law expressly permits the assignment of an interest in a Massachusetts government pension. Mass. Gen. Laws Ann. ch. 32, § 19; *see also Brower v. Brower*, 808 N.E.2d 836, 840-41 (Mass. App. Ct. 2004). In Massachusetts, courts may award a non-employee spouse "a present assignment of a percentage of the present value of the future pension benefits." *Early v. Early*, 604 N.E.2d 17, 21 (Mass. 1992) (quotation omitted). This method is preferred because it provides an immediate settlement. "[It] is customarily employed when there is a known present value of the pension, and the [employee] spouse with the pension has sufficient available assets to buy out the interest of the other spouse in the pension." *Id.*

If a buyout is unworkable, however, Massachusetts courts may award a non-employee spouse "a percentage of the pension benefits attributable to the marriage if and when the benefits are actually received." *Id.* (quotation omitted). This option, which roughly parallels the methodology outlined by this court in *Hodgins*, "avoids ... the practical problem presented when [the employee spouse has] insufficient assets to divide the present value of the pension benefits." *Id.*

We find this rubric useful here, and agree with the respondent that the master's analysis of the proper distribution of his retirement assets should have been further developed—although perhaps not in the manner the respondent contemplated. The master's award took into account only the present value of the respondent's retirement annuity. The master thus presumed that the respondent's annuity account was a freestanding entity, capable of being treated as a defined contribution plan. The award failed to fully take into account the law governing the plan, and the uncontroverted evidence presented at trial that the respondent's annuity was part of a defined benefit plan. It also ignored the uncontested evidence at trial that

the respondent intends to continue working for the MWRA until retirement, and that he intends to take his retirement allowance from the commonwealth as a "pension."

■ We hold that in cases where trial courts are tasked with dividing retirement assets of the type presented here, the *Early* analysis described above should be employed. *See also* 3A C. DOUGLAS, NEW HAMPSHIRE PRACTICE, FAMILY LAW § 19.10, at 72-73 (2002) (discussing similar methodology). Specifically, trial courts should initially attempt to assess both the present and contingent values of retirement savings. If only a present value may be readily ascertained, the court shall discern whether the pension-holding spouse would be able to buy out the prospective interest of the non-employee spouse. This course of action is preferable, since it gives each divorcing spouse complete and immediate control over his or her share of the marital estate, thereby easing the transition of the parties after dissolution. *See In the Matter of Harvey & Harvey*, 153 N.H. 425, 436 (2006), *overruled on other grounds by In the Matter of Chamberlin & Chamberlin*, 155 N.H. 13, 16 (2007).

We note that in cases where the buyout option is practicable, trial courts "are free to exercise their sound discretion to establish an appropriate valuation date" for the division of pension assets. *Watterworth*, 149 N.H. at 7 451. Thus, the inclusion of pre-marital retirement savings in the property division, *see Crowe*, 148 N.H. at 222, as well as savings accumulated after the filing of a divorce petition, *see In the Matter of Nyhan & Nyhan*, 147 N.H. 768, 770-71 (2002), is permitted if necessary to achieve an equitable award.

■ Where a buyout is not a feasible option, however, the trial court should enter a decree, per *Hodgins*, that upon maturity of the pension rights the recipient will pay a portion of each payment received to his or her former spouse. *Hodgins*, 126 N.H. at 716; *see also Rothbart v. Rothbart*, 141 N.H. 71, 74-76 (1996) (actual, not projected, pension benefit will be divided under *Hodgins* absent gross inequity; non-employee spouse may benefit by post-divorce pay raises increasing pension benefits). In particular,

> the *Hodgins* formula calculates a percentage to be paid to an employee's former spouse by dividing the number of months the employee was employed during the marriage and prior to the commencement of the divorce by the total number of credits the employee will have earned toward the pension as of the date benefits commence and awarding half of this amount to each spouse.

*Watterworth*, 149 N.H. at 452.

■ Decrees employing the *Hodgins* methodology should also account for the possibility that a pension-holding spouse may at some point claim his or her retirement savings as a lump sum if, as here, such a distribution would be permitted under the plan in question. *See* Mass. Gen. Laws Ann. ch. 32, § 11(1). The decree should award a percentage of the retirement savings attributable to the marriage to a non-employee spouse in the event of a post-divorce lump sum distribution.

Based upon the foregoing, we vacate the trial court's award of one-half of the value of the respondent's retirement annuity account on April 1, 2006, to the petitioner. We remand for further proceedings on this issue consistent with this opinion, reiterating that "it may . . . be advisable to defer distribution of [a] particular asset until the pension becomes payable, if this would maximize the benefit to both parties." *Hodgins*, 126 N.H. at 716.

The respondent's argument that the master erred by neither granting nor denying the petitioner survivorship rights in his pension in the event of his death does not require extended discussion. Whatever portion of the pension may be assigned to the petitioner on remand will be a presently-held property interest. As the trial court noted in the final decree, "The terms of th[e] decree shall be a charge against each party's estate."

## V

The respondent next challenges the trial court's order that he "become current on all obligations ordered in the Temporary Order within 30 days." The record reveals that pursuant to the court's Temporary Order, dated February 11, 2005, the respondent was responsible for one-half of the mortgage payments on the parties' marital home. The next month, the trial court reduced his obligation to $650 per month. By his own admission, the respondent was more than $4000 in arrears on these payments by the time of trial. Instead of granting a pre-trial motion for contempt filed by the petitioner, it appears that the trial court opted to enter the above-quoted order in its final decree. The respondent challenges only the manner in which he was ordered to pay his debt, arguing that the evidence presented at trial did not support a finding that he would be able to pay the petitioner in such a prompt manner.

■ In the final decree, the master made no specific findings as to the respondent's ability to pay back his arrearage. The record does not, however, indicate that the respondent submitted a specific request for such a finding. "Further, in the absence of specific findings, a court is presumed to have made all findings necessary to support its decree." *In re*

*Guardianship of Kapitula,* 153 N.H. 492, 496-97 (2006). In the instant matter, that would necessarily include a finding that the respondent could pay the petitioner his accumulated arrearage. Although the respondent arguably presented evidence to the contrary, "we defer to a trial court's judgment on such issues as . . . measuring the credibility of witnesses, and determining the weight to be given to testimony." *Id.* at 497. Furthermore, "[i]t is . . . within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented." *Id.* at 497-98 (quotation omitted). Based upon our review of the record, we do not find that the trial court—which extensively reviewed the parties' financial situations in making its support calculations—unsustainably exercised its discretion on this particular point.

## VI

Finally, the respondent argues that the trial court erred by failing in its decree to account for $27,000 the parties acknowledge was held in a joint bank account immediately prior to their separation. The record reveals that the trial court received conflicting evidence regarding the subsequent use of this money. While the petitioner claimed to have used some $23,000 to pay off jointly-incurred bills, the respondent testified that he received just $3,600 from the account, and no benefit from the remainder of the petitioner's apportionment of the funds.

In contrast to his arguments regarding the overdue mortgage payments, on this particular point, the respondent specifically requested that the master find the petitioner illegally withdrew the $27,000 at issue and spent it without his knowledge or consent. The court's final decree, however, does not account for these funds in any meaningful way.

This omission stands in contrast to two orders of the trial court which essentially promised continuing review of the propriety of any usage of funds from the parties' joint bank accounts during the pendency of their divorce. First, in its Temporary Order issued February 11, 2005, the court stated:

> Each party is temporarily awarded the use and possession of any bank account standing in their own name. However, the Petitioner shall pay over to the Respondent one-half of the amounts that were held in the parties' joint accounts on the date of the parties' separation which occurred on or about November, 2004.

Next, in an order dated August 16, 2005 on cross-motions for contempt, the trial court stated the following:

With regard to the division of the bank accounts, it was the intent of the court to safeguard the assets of the parties for final distribution and not necessarily 'divide' the accounts. Consequently, provided that the accounts have not been utilized in violation of the standing order, there is no contempt.

Despite these orders, the trial court's final decree addressed only the "respective" bank accounts of the parties, and not any accounts that may at one time have been held jointly.

Given these circumstances, the master's failure to make findings as to the division of the $27,000 in question was an unsustainable exercise of discretion. *DeButts v. LaRoche*, 142 N.H. 845, 847 (1998) (failure to exercise discretion constitutes an abuse of discretion); *see State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). It is well settled that "[i]f ... the parties [to a divorce] make specific requests for findings and rulings, as they did in this case, the court should state its reasons and make specific findings and rulings supporting its decision." *Magrauth v. Magrauth*, 136 N.H. 757, 763 (1993). Accordingly, we also remand this issue, and order the trial court to enter specific findings and rulings with respect to the joint bank account that held $27,000 just prior to the parties' separation.

*Affirmed in part; vacated in part; and remanded.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.