# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

In the Matter of J. T. M.,           :         C.M. No. 17901-S

A disabled person                :

## MEMORANDUM OPINION

Date Submitted: October 24, 2014
Date Decided: December 31, 2014

GLASSCOCK, Vice Chancellor

This Opinion involves whether a guardianship should be imposed for the benefit of J.T.M., an eighteen-year-old man resident in Delaware. Following a hearing on October 24, 2014, I imposed a guardianship appointing D.S., Mr. M.'s great-grandmother, and W.M., his father, as co-guardians. An Order was entered on that date; this Opinion supplements that Order.

Our country was founded on principles of individual rights, self-governance and self-determination. This is embodied in our founding documents, including the Declaration of Independence[1] and the Bill of Rights.[2] The Delaware Constitution of 1897 also makes clear the importance of such rights.[3] An entire branch of our jurisprudence, the criminal law, is dedicated to achieving a balance between the exercise of these rights and the interest of the State in protecting persons and property. That body of law, together with its governing constitutional provisions,[4] allows restriction or termination of those rights through incarceration or execution, but only with significant procedural safeguards and after

---

[1] The Declaration of Independence para. 2 (U.S. 1776) ("We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.").

[2] *See, e.g.*, U.S. Const. amend. V, XIV.

[3] *See, e.g.*, Del. Const. pmbl. ("Through Divine goodness, all people have by nature the rights of worshiping and serving their Creator according to the dictates of their consciences, of enjoying and defending life and liberty, of acquiring and protecting reputation and property, and in general of obtaining objects suitable to their condition, without injury by one to another; and as these rights are essential to their welfare, for due exercise thereof, power is inherent in them; and therefore all just authority in the institutions of political society is derived from the people, and established with their consent, to advance their happiness; and they may for this end, as circumstances require, from time to time, alter their Constitution of government.")

[4] *See, e.g.*, U.S. Const. amend. IV, V, VI, VIII, XIV; Del. Const. art. I, §§ 6, 7, 8, 11, 12.

determination of guilt beyond a reasonable doubt.[5] Outside of the criminal arena,

imposition of a guardianship represents the most significant deprivation of the right

to self-determination a court can impose.[6] This case represents a first chance to

address the proper standard by which evidence of the need for a guardianship must

be established.[7]

---

[5] *See, e.g., In re Winship*, 397 U.S. 358, 364 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *see generally Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.")

[6] *See, e.g.,* Alison Patrucco Barnes, *Beyond Guardianship Reform: A Reevaluation of Autonomy and Beneficence for A System of Principled Decision-Making in Long Term Care*, 41 Emory L.J. 633, 736 (1992) ("The restriction of liberty created by appointment of a substitute decision-maker is severe. The rights enjoyed by all competent adults to associate with persons of their choice, to engage in recreational, political, and religious activities, and to choose their care providers can be controlled by the substitute decision-maker."); Susan G. Haines & John J. Campbell, *Defects, Due Process, and Protective Proceedings: Are Our Probate Codes Unconstitutional?*, 33 Real Prop. Prob. & Tr. J. 215, 227 (1998) (The constitutionally protected individual interests implicated in a guardianship proceeding include: the right to choose where to live and with whom to associate; the right to make medical decisions regarding one's body; the right to marry and to associate freely; the right to travel or pursue in privacy the activities of daily living; and the right to be free from unwanted constraints or incarceration."); Jennifer L. Wright, *Protecting Who from What, and Why, and How?: A Proposal for an Integrative Approach to Adult Protective Proceedings*, 12 Elder L.J. 53, 71 (2004) ("A guardianship results in the reduction of the protected person to the status akin to that of a minor child. The protected person loses the right to determine where he or she will live, whom he or she will see, where he or she will go, and how he or she will live his or her life.") (footnote omitted).

[7] I do not mean to imply this is a case of first impression. Out of respect for the privacy rights of individuals potentially subject to guardianships as disabled persons, these proceedings are confidential. Accordingly, judicial decisions in these cases are not publicly disseminated or, as in the public version of this Opinion, the names of the participants are redacted. This is, therefore, the first public Opinion to address the proper standard of review under our current guardianship statute. I am indebted to Vice Chancellor Noble, whose careful scholarship as expressed in a non-public decision of this Court has served me as a guide.

Because it involves fiduciary relationships, guardianship has traditionally fallen within the jurisdiction of this court of equity, both with respect to its English common-law antecedents and in its current statutory incarnation. Today, all guardianships imposed in Delaware over disabled adults are pursuant to statute. The Court of Chancery is empowered by 12 *Del. C.* § 3901(a) "to appoint guardians for the person or property, or both, of any person with a disability." A "person with a disability" is one who

> [b]y reason of mental or physical incapacity is unable properly to manage or care for their [sic] own person or property, or both, and, in consequence thereof, is in danger of dissipating or losing such property or of becoming the victim of designing persons or, in the case where a guardian of the person is sought, such person is in danger of substantially endangering person's own health, or of becoming subject to abuse by other persons or of becoming the victim of designing persons[.][8]

The Petition here was filed by W.M. ("W.") and D.S. ("D."),[9] the father and great-grandmother of Mr. M., respectively. In compliance with Court of Chancery rules, the Petition was accompanied by an affidavit from Mr. M.'s treating physician.[10] According to that affidavit, Mr. M. suffers from "a disability that interferes with the ability to make or communicate responsible decisions regarding health care, food, clothing, shelter or administration of property," caused by

---

[8] 12 *Del. C.* § 3901(a)(2).
[9] I use the first names of the Petitioners to differentiate them from the proposed ward, Mr. M. No disrespect is intended.
[10] *See* Ct. Ch. R. 175(d).

autism, attention deficient hyperactive disorder, and encephalopathy.[11] As a result of this disability, Mr. M. "is unable to perform the following functions: (1) Activities of daily living; (2) Cognitive activities, e.g. needs help with dressing, brush[ing] teeth and hygiene, poor judgment."[12] In the opinion of the physician, despite his disability, Mr. M. has sufficient mental capacity to understand the nature of guardianship and to consent to the appointment of a guardian.

Consistent with the procedures established by Rule 176,[13] an attorney was appointed *ad litem* for Mr. M. That attorney, Andrew A. Whitehead, Esquire, interviewed his client, Mr. M., at his office in Georgetown on October 8, 2014. He also reviewed the physician's affidavit and met with the Petitioners. In a thoughtful report to the Court, Mr. Whitehead opined that his client was a disabled person under the provisions of 12 *Del. C.* § 3901(a). He reported that Mr. M. consented to and supported the appointment of his father and great-grandmother as his guardians. The Petitioners disclosed to Mr. Whitehead that Mr. M. receives Social Security Disability benefits in cash each month as well as benefits under Medicaid. He lives with D. during the week, as he has for many years, and attends a day program to educate those with autism spectrum disorder. During weekends, Mr. M. lives with W. At both residences, he has his own room and feels "at

---

[11] Aff. of Thiele Anthony, MD.
[12] *Id.*
[13] *See* Ct. Ch. R. 176(a).

4

home." He also spends one weekend a month with his mother, who lives in another state. The report explains that Mr. M. "was diagnosed with autism at a very young age and has been in [an academic autism program] since he was three years old." The guardians explained to the attorney *ad litem* that Mr. M. could not comprehend the value of money, that he has been tricked out of toys and other property by children in his neighborhood, that he could not grasp budgeting and struggles with counting money, and that he suffers from anxiety under stress. Further, he is unable to take his required medications except under direction of others. Mr. Whitehead supports appointment of W. and D. as guardians for Mr. M.

## I. STANDARD OF REVIEW

To impose a guardianship, I must find that, by reason of mental or physical incapacity, the proposed ward is "unable to properly manage or care for [his] own person or property," and that as a result, he is "in danger of dissipating or losing such property or of becoming the victim of designing persons or, in the case where a guardian of the person is sought, such person is in danger of substantially endangering the person's own health . . . ."[14] The statute, however, is silent as to the standard by which this finding must be made. As described above, the criminal law requires proof beyond a reasonable doubt before substantial deprivations of personal liberty interests may be imposed by the Court; at least one state imposes

---

[14] 12 *Del. C.* § 3901(a)(2).

this standard to guardianship as well.[15]  The United State Supreme Court, on the other hand, has held that certain governmental actions that limit individual rights of self-determination and self-control, such as termination of parental rights, civil commitment, deportation, and denaturalization, must be supported by evidence that is clear and convincing.[16]  The imposition of guardianship is, I find, even more restrictive of substantial liberty interests than those actions.  Indeed, the majority of states impose a clear and convincing evidentiary standard for establishing a guardianship by statute.[17]  While Delaware's cases have not been consistent in the application of a standard, I find that imposition of a guardianship must be

---

[15] *See* Sally Balch Hurme and ABA Comm'n on Law and Aging, *Conduct and Findings of Guardianship Proceedings* (2013), *available at* http://www.americanbar.org/content/dam/aba/administrative/law_aging/2014_CHARTConduct.authcheckdam.pdf; *see, e.g.*, *In re Kapitula*, 899 A.2d 250, 253 (N.H. 2006) (Findings justifying imposition of a guardianship must be "in the record and must have been based upon evidence supporting them beyond a reasonable doubt.").

[16] These decisions have been made in the context of the due process clause of the Fifth and Fourteenth Amendments.  *See Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982) ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence."); *Addington v. Texas*, 441 U.S. 418, 424 (1979) ("We noted earlier that the trial court employed the standard of 'clear, unequivocal and convincing' evidence in appellant's [civil] commitment hearing before a jury. That instruction was constitutionally adequate.  However, determination of the precise burden equal to or greater than the 'clear and convincing' standard which we hold is required to meet due process guarantees is a matter of state law which we leave to the Texas Supreme Court."); *Woodby v. INS*, 385 U.S. 276, 286 (1966) ("We hold that no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true."); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) ("[I]n view of the grave consequences to the citizen, naturalization decrees are not lightly to be set aside—the evidence must indeed be 'clear, unequivocal, and convincing' and not leave 'the issue in doubt.'") (citation omitted).

[17] Sally Balch Hurme and ABA Comm'n. on Law and Aging, *Conduct and Findings of Guardianship Proceedings*, *supra* note 15.

supported by evidence that is clear and convincing, and not merely by a preponderance of the evidence.

At the hearing on October 24, 2014, I was able to question Mr. M. as well as D. and W. I reached the same conclusion as did the attorney *ad litem* on behalf of Mr. M. All the evidence indicates that Mr. M. has cognitive disabilities that make him unable to manage his own property, make him subject to designing persons and place him at risk of serious physical harm if his consumption of medication is unsupervised. Although he is disabled, Mr. M. can comprehend the nature of a guardianship and supports its imposition here as in his best interest. He clearly loves and trusts the Petitioners, and they in turn love him. Mr. M.'s mother supports the guardianship, which is in all respects uncontested. Mr. M., who is by all accounts a pleasant and likeable young man, is indeed fortunate to have a loving family to support and assist him. I find, by clear and convincing evidence, that Mr. M. is a disabled person subject to guardianship under 12 *Del. C.* § 3901(a)(2).

## II. CONCLUSION

For the reasons above, the Petition for Guardianship is granted. I further find that that the Petitioners are the appropriate persons to serve as Mr. M.'s guardians and that the guardianship is plenary.[18] In this particular instance, the record indicates clearly that Mr. M. is unable to manage his property or health care

---

[18] *See* 12 *Del. C.* § 3922.

7

and that it is appropriate, consistent with the discussion above, that the use of his resources and his place of residence and living conditions be as decided by his guardians in his best interest. However, Mr. M. is a very young man still in school and, I expect, learning and growing intellectually and emotionally. As a result, I direct the Office of the Public Guardian to provide me with a report in one year concerning Mr. M.'s condition and whether any aspects of the guardianship should be modified.[19] An Order consistent with this Opinion has already been placed on the docket.

---

[19] The required report from the Office of the Public Guardian shall not relieve the guardians of providing a yearly physician's report in twelve months as required by Court Rule. *See* Ct. Ch. R. 180-B.