**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2019-0281, <u>In the Matter of Jennifer Faherty and Kevin Faherty</u>, the court on January 31, 2020, issued the following order:**

Having considered the parties' briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The respondent, Kevin Faherty (Husband), appeals the final decree entered by the Circuit Court (<u>Introcaso</u>, J.) in his divorce from the petitioner, Jennifer Faherty (Wife). We affirm.

The trial court has broad discretion in fashioning a divorce decree. <u>In the Matter of Crowe & Crowe</u>, 148 N.H. 218, 221 (2002). We will not overturn its decision absent an unsustainable exercise of discretion. <u>Id</u>. This standard of review means that we review only whether there is an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made. <u>In the Matter of Kempton & Kempton</u>, 167 N.H. 785, 792 (2015). The trial court's discretion necessarily extends to matters such as assigning the weight to be given evidence and measuring the credibility of witnesses. <u>In the Matter of Summers & Summers</u>, 172 N.H. 474, 479 (2019). Conflicts in the testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve. <u>Id</u>. The trial court's factual findings are binding upon this court if they are supported by the evidence and are not legally erroneous. <u>Id</u>.

"Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence." <u>Cook v. Sullivan</u>, 149 N.H. 774, 780 (2003). We will not substitute our judgment for that of the trial court. <u>See</u> <u>Brent v. Paquette</u>, 132 N.H. 415, 419 (1989). Nor will we reweigh the equities. <u>In the Matter of Heinrich & Heinrich</u>, 164 N.H. 357, 365 (2012).

Husband first challenges the trial court's property distribution. <u>See</u> RSA 458:16-a (2018) (amended 2019). In its narrative order, the trial court stated that it had "made a considerable effort to divide the parties' assets equitably, understanding that [Husband] brought assets into the marriage which built a foundation for the parties' financial growth, while [Wife] has actively worked to improve her earning capacity through education and a variety of work experiences." The court observed that the "bulk of the marital estate is in

investments," which are "subject to fluctuations in value," and, thus, that it was "nearly impossible" to order an "'equal' division." Nonetheless, the court stated that it endeavored to award the parties "equitable shares of the marital estate, as well as some considerable debt obligations." Based upon the "moderate length of the parties' marriage," the disparity in their earnings, and other factors, the court determined that it was "fair and equitable to award both parties an equal share of the marital assets, including those brought into the marriage by [Husband]." However, with respect to the parties' debts, the court decided that because Husband "was always the majority income-earner during the marriage and likely his earning capacity drove and supported the parties' lifestyle," and because "he maintains a steady base income which exceeds that of [Wife] by a considerable factor," it was "reasonable to order that he be liable for a larger share of the marital debts (excluding [Wife's] student loans)." Thereafter, the parties filed motions to reconsider and/or for clarification, and, as a result, the trial court amended its decree to conform to its narrative order.

"In a divorce proceeding, marital property is not to be divided by some mechanical formula but in a manner deemed just based upon the evidence presented and the equities of the case." In the Matter of Geraghty & Geraghty, 169 N.H. 404, 417 (2016) (quotation omitted). Under RSA 458:16-a, II, "an equal division of property is presumed equitable unless the trial court decides otherwise after considering one or more of the factors designated in the statute." Id. (quotation omitted). The statute lists factors that the court may consider, such as the length of marriage, ability of the parties to provide for their own needs, the contribution of each party during the marriage, and the value of property contributed by each party. See RSA 458:16-a, II. Additionally, the court may consider any other factor it deems relevant. RSA 458:16-a, II(o). The court need not consider all of the enumerated factors or give them equal weight. Geraghty, 169 N.H. at 417.

Husband argues that the trial court's property division constitutes an unsustainable exercise of discretion because the trial court stated that an equal division was equitable, but then divided the estate unequally. He asserts that "the total value of the marital estate, excluding the equity in the marital home, was $434,001," and, of this, he was awarded 44.7%, while Wife was awarded 55.3%. With respect to the marital home, he asserts that the equity in the home was $122,594, and although the parties were each awarded 50% of the equity, he was required to use his share to pay down certain credit cards. Thus, according to Husband, Wife was awarded 69% of the equity in the marital home, while he was awarded only 31%.

Although Wife asserts that these arguments were not preserved for our review, we disagree. Husband specifically argued in one of his post-decree motions that the trial court awarded Wife "slightly more than 55% of the marital assets, which is contrary to the court's intention of a 50/50 division."

2

Husband argued in another post-decree motion that the trial court did not, in fact, allocate 50% of the equity in the marital home to each party because it ordered him to pay off certain credit cards.

As to the merits of Husband's arguments, we do not share his interpretation of the trial court's order. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (explaining that the meaning of a trial court order raises an issue of law and that we interpret such orders de novo). The trial court did not order an equal division of the marital estate. Rather, it determined that it was equitable to equally divide the marital assets and to unequally divide the marital debt.

Husband next asserts that an unequal division of the estate is inequitable because: (1) even though the parenting plan awarded the parties roughly equal parenting time, he has the children more than 50% of the time; (2) he earned more income than Wife earned during the marriage; (3) the parties were married for slightly fewer than ten years; (4) Wife is better educated than Husband and "arguably" has a more stable job than he does; and (5) although his base salary exceeds Wife's salary, his earnings fluctuated considerably between 2014 and 2017, and he does not expect to earn "significant commissions (over $500/month) in the months following trial." Based upon our review of the record submitted on appeal, we conclude that the trial court reasonably found that its property division was equitable. See Kempton, 167 N.H. at 800.

Husband next contends that the trial court erred by ordering him to: (1) refinance the mortgage on the marital home; (2) pay Wife one-half of the home's equity; and (3) pay some of her credit card debt "from his funds." The trial court found that the marital residence, valued at $350,000, had a mortgage totaling $227,406.26, and that it was "fair and equitable that the marital home net proceeds be divided 50% to [Wife] and 50% to [Husband]." Although Husband contributed to the down payment for the home, the trial court found that its upkeep and maintenance "was a joint marital effort that lasted nearly 10 years." The trial court acknowledged that Husband wanted to retain the home, and ordered that he could retain it, provided that he refinanced the mortgage so as to remove Wife's name from it and paid her "an amount equal to 50% of the $350,000 value less the payoff of the mortgage loan." If Husband were unable to refinance the mortgage in this way, the court ordered that the home be sold. The court further ordered Husband to use "any proceeds he may realize [from the home's sale] or any excess of refinancing funds he may obtain" to pay off certain credit cards and to pay off the balance of the home equity line of credit.

Husband argues that this portion of the decree "exceeded the [trial court's] authority" as we explained in In the Matter of Beal & Beal, 153 N.H. 349 (2006). In Beal, the trial court found that because the parties had debt

3

equal to or exceeding $90,000, it was inequitable to award certain of their Canadian property to either party.  Beal, 153 N.H. at 349.  Rather, the court decided, a real estate commissioner should sell the property and pay off the parties' debts with the net sale proceeds, "mak[ing] his best effort to negotiate a settlement with creditors with particular emphasis on obligations that have been charged off and/or placed in collection."  Id.  We held that RSA 458:16-a, II did not authorize the trial court to order the sale of the Canadian property, a marital asset, for the benefit of third-party creditors, observing that it was "sound policy to adopt a rule which will not require creditors to intervene in contested dissolution actions," effectively "turn[ing] a dissolution action into a creditor's proceeding."  Id. at 351 (quotation omitted).

Husband argues that the trial court's order in this case is akin to the trial court order in Beal.  Wife contends that Husband failed to preserve this argument for our review, and we agree.

It is a long-standing rule that, generally, parties may not have judicial review of matters that were not properly raised in the trial court.  Thompson v. D'Errico, 163 N.H. 20, 22 (2011).  "The rationale behind the rule is that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court."  Mortgage Specialists v. Davey, 153 N.H. 764, 786 (2006) (quotation and brackets omitted).  It is the burden of the appealing party, here Husband, to provide this court with a record demonstrating that he specifically raised his appellate issues before the trial court.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).  The record submitted on appeal does not demonstrate that Husband ever argued in the trial court that the court's order was contrary to Beal.  Because Husband has failed to demonstrate that he raised this argument in the trial court, we decline to address it.

Husband next contends that the trial court erred by not requiring Wife to refinance her student debt.  Under the decree, Wife was made "solely responsible" for paying off the approximately $32,000 balance due on her student loans, and the decree required that she "indemnify and hold [Husband] harmless with respect to same."  Husband argues that, unless Wife refinances this debt, it will remain on his credit rating and will impact his ability to obtain future loans.  He also contends that it is "patently unfair" to require that "he use his share of the equity in the marital home to pay off wife's debts, while not holding the wife to the same standard."  Husband contends that the result he seeks is required by Bonneville v. Bonneville, 142 N.H. 435, 438 (1997).  We disagree.

Our decision in Bonneville concerned interpreting the meaning of a divorce decree.  There, we held that, with respect to assets the parties jointly owned during the marriage, "we will generally construe ambiguous language in a decree favoring a mortgage rather than a co-ownership" so as "to avoid future

4

conflicts between the parties and eliminate joint ownership." Bonneville, 142 N.H. at 438. Nothing in Bonneville required the trial court in this case to order Wife to refinance her student loan debt. Nor did our decision in Bonneville preclude the court from making Wife solely responsible for that debt while also requiring her to indemnify and hold Husband harmless as to that debt.

Husband next asserts that the trial court, in effect, ordered him to pay Wife's attorney's fees without following the so-called Gosselin procedure, which requires a trial court to assess the reasonableness of the claimed attorney's fees before making an attorney's fee award. See Gosselin v. Gosselin, 136 N.H. 350, 353-54 (1992); see also In the Matter of Hampers & Hampers, 154 N.H. 275, 290 (2006). We agree with Wife that the Gosselin procedure does not apply here because the trial court did not make an attorney's fee award.

The trial court found that Wife accumulated approximately $20,646 in credit card debt "when she was unable to meet her monthly expenses" because she lacked sufficient employment income and support from Husband and used three credit cards to pay her household expenses, to meet the needs of the parties' children, and to pay for legal fees. The court found that it was "fair and equitable" for Husband to pay that debt "given the disparity in the parties' incomes at the time of the divorce." In response to the parties' post-decree motions, the trial court explained that it had not received any "detailed evidence about either party's respective attorney's fees," and that neither party had requested an attorney's fee award. The court stated that it had, instead, "received general information [about] the use of credit cards (unsecured debts) to pay various expenses by both parties during the pendency of the divorce, which included attorney's fees/legal fees, without any specificity." Further, the court explained, it "did not specifically order [Husband] to pay [Wife's] attorney's fees, but rather the credit card balances which apparently included some legal fees, which were not defined for the court." The court stated that it intended Wife "to be responsible for her charges [incurred] AFTER the temporary orders which provided her sufficient income to cover her chosen expenses during the temporary period."

Here, as Wife aptly argues, the trial court did not make an attorney's fee award, but rather ordered Husband to pay off certain credit cards that Wife had used to pay her expenses before a temporary decree issued. To the extent that the credit cards were used to pay legal fees and that Husband was ordered to pay off those credit cards, the fees "are in the nature of a property award," to which the Gosselin procedure does not apply.

Husband next asserts that the trial court erred by making him responsible for 75% of the children's uninsured medical expenses. See RSA 461-A:14, IX(a) (2018) (requiring trial courts to include "the court's determinations and findings relative to health insurance and the payment of uninsured medical expenses for the child" in each child support order). In

response to Husband's post-decree motions, the trial court explained that it had divided the total child support obligation, including the obligation to pay for the children's uninsured medical expenses, between the parties in proportion to their respective incomes. Husband has failed to demonstrate that, in so ruling, the trial court committed reversible error. See Gallo v. Traina, 166 N.H. 737, 740 (2014).

Husband next challenges his alimony obligation. RSA 458:19 (2018) (amended 2018) governs the alimony award in this case. Pursuant to RSA 458:19, I, the trial court may award alimony, either temporary or permanent, for a definite or indefinite period of time, if it finds that: (1) the party in need lacks sufficient income, property, or both to provide for her reasonable needs, considering the style of living to which the parties have become accustomed during the marriage; (2) the payor is able to continue to meet his own reasonable needs, considering the style of living to which the parties have become accustomed during the marriage; and (3) the party in need cannot be self-supporting through appropriate employment at a standard of living that meets reasonable needs.

In determining the amount of alimony, a trial court must consider various factors enumerated in RSA 458:19, IV. Specifically, the court must consider:

> the length of the marriage; the age, health, social or economic status, occupation, amount and sources of income, the property awarded under RSA 458:16-a, vocational skills, employability, estate, liabilities, and needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; the fault of either party as defined in RSA 458:16-a, II(*l*); and the federal tax consequences of the order.

RSA 458:19, IV(b). The court "may also consider the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates and the noneconomic contribution of each of the parties to the family unit." RSA 458:19, IV(d).

In awarding alimony to Wife, the trial court found that, "although she is well-educated, and possesses a proven track-record of effort and accomplishment, [she] still has a more limited earning capacity as a school teacher than [Husband] who has been a successful salesperson with a history of earning a six[-]figure income." The court found that Wife "has some need for alimony even after deducting from her projected expenses her employment income of $4,176.90 per month and child support of $745 bi-weekly (plus an undetermined amount of additional child support to be paid from [Husband's] commission income); factoring in tax liability to her for her alimony income and [Husband's] tax advantage."

With respect to Husband's ability to pay, the trial court found that he earns base pay of $8,333.34 per month in addition to commission income, and that, at the time of the divorce hearing, he was on track to earn $170,000. In 2017, his "W-2 earnings" were $238,131.15; in 2016, they were $119,096,45; in 2015, they were $183,374.89; and in 2014, they were $275,436.00.

The court decided that given the length of the parties' marriage, their age and health, their relative earning capacities, Husband's potential to earn substantial commissions and bonuses, Wife's need, and Husband's ability to pay, it was "fair and reasonable that [Husband] be ordered to pay alimony to [Wife] in the amount of $1,245 per month." The court further found that it was reasonable for Husband to pay this amount for five years "given the length of the parties' marriage, the large disparities in their incomes and earnings, and [Husband's] likely ability to reacquire a greater amount of savings and retirement assets after the alimony order is complete."

Husband essentially faults the trial court for considering his earning history, including his commissions, when determining his ability to pay alimony. He argues that "[t]he only way [he] can ever manage to live a reasonably comparable lifestyle to what the parties enjoyed during the marriage[ ] is to hope that his income will be supplemented with commissions." Otherwise, he contends, "there is simply no money available for a fixed $1,245/month alimony award," and the trial court's "finding that [he] could afford to pay alimony in this amount is error." We find no error in this regard. We observe that Husband acknowledges that, at the time of the November 2018 final hearing, his financial affidavit showed gross monthly income of $8,333.00 and average monthly commissions of $3,034.00.

Husband next contends that the amount and duration of alimony "far exceeds what is fair and equitable." However, the trial court found facts relevant to the enumerated statutory factors, and there is evidence to support those findings. Moreover, given the length of the parties' marriage, the parties' employment histories, and the disparity in their incomes, we cannot say that a monthly alimony award of $1,245 for five years constitutes an unsustainable exercise of discretion. See id. at 804 (upholding an alimony award of $2,850 for eight years where obligor earned $14,000 per month); see also In the Matter of Gordon and Gordon, 147 N.H. 693, 699 (2002) (affirming alimony award of $2,000 per month for the first two years after divorce and $1,000 per month for the following three years when husband earned approximately $13,000 monthly).

Husband next argues that the trial court erred when it denied his post-decree motion to modify his alimony obligation. Husband filed his motion approximately one week after the court issued its final decree. In it, Husband argued that the alimony award was unfair because it left him with "very little

7

income." The trial court treated the motion as a motion to reconsider the final divorce decree and denied it. Husband argues that the trial court erred by not treating the motion as a motion to modify. We conclude that the trial court did not err in this respect.

Husband next asserts that the trial court erred by ordering him to maintain a $100,000 life insurance policy to secure his alimony obligation and a $250,000 life insurance policy to secure his child support obligation. Husband contends that such amounts are excessive.

RSA 458:21 (2018) provides, "In all cases where alimony or an allowance is decreed for a spouse or children the court may require security to be given for the payment thereof." Based upon our review of the record, we cannot conclude that the trial court unsustainably exercised its discretion with regard to the life insurance it required Husband to maintain.

Finally, Husband argues that the trial court erred because it afforded less time for the final hearing than originally noticed, and because it did not admit a certain exhibit into evidence. We decline to address the merits of these arguments because Husband has not demonstrated that he preserved them for our review.

<u>Affirmed</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

8