# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0345, <u>K.H. v. D.P.</u>, the court on November 16, 2022, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, D.P., appeals a decision of the Circuit Court (<u>Pendleton</u>, J.) granting a domestic violence final order of protection in favor of the plaintiff, K.H. <u>See</u> RSA 173-B:5 (2022). The defendant challenges the sufficiency of the evidence to support the trial court's decision. We affirm.

To be granted a domestic violence final order of protection, the plaintiff must establish by a preponderance of evidence that the defendant engaged in "abuse." RSA 173-B:5, I. "Abuse" means the commission or attempted commission of one or more enumerated crimes by a family or household member or a current or former sexual or intimate partner when such conduct "constitute[s] a credible present threat" to the plaintiff's safety. RSA 173-B:1, I (2022); <u>see</u> <u>S.C. v. G.C.</u>, 175 N.H. 158, 163 (2022). The trial court "may consider evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the [plaintiff] to fear for his or her safety or well-being." RSA 173-B:1, I. Upon proof of abuse, the trial court must "grant such relief as is necessary to bring about a cessation of abuse." RSA 173-B:5, I.

The trial court's "findings of facts shall be final, but questions of law may be transferred from the circuit court to the supreme court." RSA 173-B:3, VI (2022). We review sufficiency of the evidence claims as a matter of law, upholding the trial court's findings and rulings unless they lack evidentiary support or are tainted by legal error. <u>S.C.</u>, 175 N.H. at 162. We defer to the trial court's judgments as to the credibility of the witnesses and the weight of their testimony. <u>Id</u>. at 162-63. The trial court is free to accept or reject, in whole or in part, the testimony of any witness, and is not required to believe even uncontested testimony. <u>In the Matter of Geraghty & Geraghty</u>, 169 N.H. 404, 416 (2016). We view the evidence in the light most favorable to the prevailing party, here, the plaintiff. <u>S.C.</u>, 175 N.H. at 163.

It is the defendant's burden, as the appealing party, to provide so much of the record as is necessary to decide the issues raised on appeal. <u>Bean v. Red Oak Prop. Mgmt.</u>, 151 N.H. 248, 250 (2004). We assume that relevant portions of the record not provided on appeal support the trial court's decision. <u>See</u> <u>id</u>.

We note that in this case, the defendant takes issue with several factual representations of the plaintiff in her petition, but has not provided the petition as part of the record on appeal. We likewise assume that the trial court made all findings necessary to support its decision. See Nordic Inn Condo. Owners' Assoc. v. Ventullo, 151 N.H. 571, 586 (2004).

In this case, the trial court found that the defendant engaged in "abuse" of the plaintiff for purposes of RSA 173-B:1, I, by stalking her. Stalking a plaintiff in violation of RSA 633:3-a (Supp. 2021) is one of the enumerated crimes that may constitute "abuse" for purposes of RSA 173-B:5, I. See RSA 173-B:1, I(d) (defining "abuse" to include the commission or attempted commission of "[i]nterference with freedom as defined in RSA 633:1 through RSA 633:3-a"). The crime of stalking includes "[p]urposely, knowingly, or recklessly engag[ing] in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety . . ., and the person is actually placed in such fear." RSA 633:3-a, I(a). A "course of conduct" "means 2 or more acts over a period of time, however short, which evidences a continuity of purpose." RSA 633:3-a, II(a). Acts that may constitute a "course of conduct" include, but are not limited to, "[f]ollowing, approaching, or confronting that person," "[a]ppearing in close proximity to, or entering the person's . . . place of employment . . . or other place where the person can be found," and "[a]ny act of communication, as defined in RSA 644:4, II." RSA 633:3-a, II(a)(2), (3), (7). RSA 644:4, II (Supp. 2021) defines "communicates" for purposes of the crime of harassment to mean "impart[ing] a message by any method of transmission, including but not limited to telephoning or personally delivering or sending or having delivered any information or material by written or printed note or letter, package, mail, courier service or electronic transmission."

The trial court found that the plaintiff terminated the parties' relationship following their second date, which had ended in an "eruptive" argument. The plaintiff described the defendant's temper, within the context of the argument, as "explosive." Following this incident, the defendant sent the plaintiff numerous text messages and voicemails.

Shortly after the parties' second date, while the plaintiff was on a date at a restaurant with another man, the defendant, who was present at the restaurant's bar, paid for the dinners of both the plaintiff and her date in order to embarrass or make the plaintiff's date jealous. After the defendant had left the restaurant, another bar patron revealed to the plaintiff that the defendant had been talking about her the entire time that the defendant was there, that the defendant knew "everything about [the plaintiff's] life," and that the conversation had caused the patron to be nervous for the plaintiff. The defendant additionally sent the plaintiff's date a lengthy message through a social media account about the plaintiff.

2

Following the incident at the restaurant, the defendant continued to send the plaintiff text messages, begged her forgiveness, requested that she accompany him on another date and on a trip to Cancun, and twice sent her flowers. After the plaintiff told the defendant to stop contacting her and threatened to seek a restraining order if he continued to contact her, the defendant left lengthy voicemails for the plaintiff, which the trial court characterized as "including angry messages [in which] the Defendant called the Plaintiff different names and degraded her" and "exhibited significant anger." He also appeared at a gym, which was not in the area where the defendant both lives and works, at a time when he was aware the plaintiff would be present, approached the plaintiff, stood and "hovered" directly over her while she was exercising in a seated position, and attempted to communicate with her. This incident led to the plaintiff jumping up and yelling, gym personnel intervening, and the plaintiff reporting the matter to the police. That same day, the defendant had sent the plaintiff a voicemail asking her out, and after the incident, he sent an additional voicemail telling her that she was "ridiculous for yelling at him and involving others."

Approximately a week after the incident at the gym, the defendant went to another gym where the plaintiff, who is a personal trainer, trains clients, took photographs of himself exercising there, and posted the photographs to social media. Although the plaintiff was not present when this latter incident occurred, it apparently led to the defendant's arrest. The plaintiff testified that, as a result of the defendant's conduct, she is "scared for [her] life," she is "scared for [her] children's li[ves]," she is "scared to show up to work," she is "always looking over [her] shoulders," and she has "PTSD from this."

Viewing the evidence in the light most favorable to the plaintiff, S.C., 175 N.H. at 163, we conclude that the trial court reasonably found that the defendant engaged in stalking of the plaintiff within the meaning of RSA 633:3-a, and that his conduct presents a credible present threat to the plaintiff's safety. To the extent the defendant is raising additional arguments in his brief, the arguments are not sufficiently developed to warrant judicial review. See State v. Blackmer, 149 N.H. 47, 49 (2003).

Affirmed.

MacDonald, C.J., and Hicks, Bassett, and Hantz Marconi, JJ., concurred.

**Timothy A. Gudas,
Clerk**