**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0297, <u>In the Matter of Joy Gagnon and Gary Gagnon</u>, the court on April 10, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The respondent, Gary Gagnon (Husband), appeals the final decree issued by the Circuit Court (<u>Countway</u>, J.) in his divorce from the petitioner, Joy Gagnon (Wife).  On appeal, he challenges the trial court's child support order and property division.  We affirm.

The trial court has broad discretion in fashioning a final divorce decree.  <u>In the Matter of Braunstein & Braunstein</u>, 173 N.H. 38, 46 (2020).  Its discretion necessarily encompasses decisions concerning child support and property division.  <u>Id</u>.  We will not overturn the trial court's rulings on such matters absent an unsustainable exercise of discretion.  <u>Id</u>. at 47.  This standard of review means that we review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it could reasonably have been made.  <u>Id</u>.  We will not substitute our judgment for that of the trial court or reweigh equities.  <u>Id</u>.  We also defer to the trial court's judgment in matters of conflicting testimony, evaluating witness credibility, and deciding the weight to be accorded evidence.  <u>Id</u>.

The trial court's discretion extends to matters such as assigning weight to evidence and assessing the credibility and demeanor of witnesses.  <u>In the Matter of Kurowski & Kurowski</u>, 161 N.H. 578, 585 (2011).  Conflicts in the testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve.  <u>Id</u>.  The trial court's factual "findings . . . are binding upon this court if they are supported by the evidence" and are not legally erroneous.  <u>Id</u>.

We first consider Husband's challenges to the trial court's child support order.  In the trial court, Wife sought child support of $1,007 monthly based upon imputing monthly income to Husband of $4,333.33 and a finding that he is underemployed.  Husband sought a zero-support order based upon the parties' equal parenting time.

The trial court rejected both proposals.  Utilizing the income reported in the parties' financial affidavits, the trial court determined that Husband would

be obligated to pay $870 per month under the child support guidelines. The court acknowledged that, theoretically, a zero-support order "would be logical in this case[] if the parties could fairly share child-related expenses," but decided that, because the parties struggle with sharing such expenses, issuing a zero-support order was not in the children's best interests. Specifically, the court found that Wife "had had difficulty in collecting for reasonable child-related medical expenses from [Husband]," and "has taken on the role of organizing, and paying for, routine care and activities and the related expenses for the children." So as "to avoid a confiscatory order, and . . . ensure that both parties have a full opportunity to provide for the children during their parenting time," the court ordered Husband to pay $600 monthly, concluding that the downward deviation was appropriate "based upon the shared parenting schedule" and "the earning potential of both parties, considering both parents' ability to maintain a reasonable lifestyle for the children."

Husband contends that, by considering Wife's "role of organizing, and paying for, routine care and activities and the related expenses thereof for the children," the court "included a reason for determining child support that is not listed in the statute, is not economic in nature and does not relate to a parent's financial condition upon his/her ability to meet a child's need." We disagree.

New Hampshire's child support guidelines, codified in RSA chapter 458-C, establish a uniform system for determining child support awards. In the Matter of Silva & Silva, 171 N.H. 1, 4 (2018). Pursuant to RSA 458-C:4, II, there is a rebuttable presumption that an award calculated under the child support guidelines is the correct amount of child support. RSA 458-C:4, II (2018). RSA 458-C:4, II provides that this presumption may be overcome, and the trial court may deviate from the guidelines, when it finds by a preponderance of the evidence, that applying the guidelines would be "unjust or inappropriate," based upon "[s]pecial circumstances" set forth in RSA 458-C:5, I. Id.

RSA 458-C:5, I, "includes a non-exclusive list of special circumstances that, if raised by a party or the court, the court shall consider in making an adjustment that deviates from the child support guidelines." Silva, 171 N.H. at 4; see RSA 458-C:5, I (Supp. 2022). Although this list is non-exclusive, we have interpreted "special circumstances" to include only circumstances that are "economic in nature and relate to the impact of a parent's financial condition upon his or her ability to meet a child's needs." Silva, 171 N.H. at 4 (quotation omitted). Additionally, the trial court must consider any special circumstances "in light of the best interests of the child." RSA 458-C:5, I.

We find no error in the trial court's consideration of the parties' struggle to share child-related expenses, including medical expenses and the expenses for "routine care and activities." Indeed, RSA 458-C:5, I(h)(1) specifically

authorizes the court to consider such factors. RSA 458-C:5, I(h)(1) provides that "[e]qual or approximately equal parenting residential responsibilities in and of itself shall not eliminate the need for child support and shall not by itself constitute ground for an adjustment." The statute further provides that, in considering requests for adjustments to the application of the child support guidelines based upon the parenting schedule, the court "may" consider:

(A) Whether, in cases of equal or approximately equal residential responsibility, the parties have agreed to the specific apportionment of variable expenses for the children, including but not limited to education, school supplies, day care, after school, vacation and summer care, extracurricular activities, clothing, health insurance costs and uninsured health costs, and other child-related expenses.

(B) Whether the obligor parent has established that the equal or approximately equal residential responsibility will result in a reduction of any of the fixed costs of child rearing incurred by the obligee parent.

(C) Whether the income of the lower earning parent enables that parent to meet the costs of child rearing in a similar or approximately equal style to that of the other parent.

RSA 458–C:5, I(h)(2)(A)-(C). Given this statutory language, we conclude that the trial court did not err by considering the parties' difficulties sharing expenses for the children.

We next consider Husband's challenges to the property distribution. In New Hampshire, by statute, "all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties," is subject to equitable distribution. RSA 458:16-a (2018). In a divorce proceeding, marital property is not to be divided by some mechanical formula, but in a manner deemed "just" based upon the evidence presented and the equities of the case. In the Matter of Costa & Costa, 156 N.H. 323, 327 (2007).

Under RSA 458:16-a, II, "an equal division of property is presumed equitable unless the trial court decides otherwise after considering one or more of the factors designated in the statute." In the Matter of Geraghty & Geraghty, 169 N.H. 404, 417 (2016) (quotation omitted). The statute lists factors that the court may consider, see RSA 458:16-a, II, and also permits the court to consider any other factor it deems relevant, see RSA 458:16-a, II(o); see also In the Matter of Sarvela & Sarvela, 154 N.H. 426, 431 (2006). The court need not consider all of the enumerated factors or give them equal weight. Geraghty, 169 N.H. at 417. Additionally, a trial court is not precluded from awarding a

particular asset in its entirety to one party.  In the Matter of Salesky & Salesky, 157 N.H. 698, 708 (2008).

The trial court equally divided between the parties the equity in the marital home and the proceeds from the sale of other real estate owned by the parties.  Each party was awarded his or her vehicle(s), retirement plans, and bank accounts, free and clear of the other party's interest.  Wife was made solely responsible for certain of her credit card debt and her student loans; Husband was made solely responsible for certain of his credit card debt and the debt associated with his business.  The court attributed no value to the business itself, although it awarded the business to Husband.

Husband argues that the trial court's property distribution was inequitable, in part, because the court did not "credit" him with bringing real estate into the marriage.  This argument essentially asks us to reweigh the equities in this case, which is not our role on appeal.  Braunstein, 173 N.H. at 47.

Husband argues that the property distribution was inequitable also because the court assigned no value to his now defunct business and made him solely responsible for its associated debt.  The trial court found "insufficient evidence to ascribe any value, either positive or negative to the business."  Because this finding is supported by evidence in the record and is not legally erroneous, we uphold it.  See id. at 46-47.

The trial court's allocation of the business debt solely to Husband was within its discretion.  The trial court has discretion to allocate responsibility for debts in the manner it deems equitable.  See Costa, 156 N.H. at 327-28 (affirming trial court's assignment of approximately $252,000 in debt to the petitioner, which might otherwise have been assignable in whole or in part to the respondent).  In this case, the court awarded the business to Husband and ruled that he was responsible for any associated debt because Wife "played little to no role in the business."  The record supports these factual findings.  Based upon this record, we conclude that Husband has failed to demonstrate that the trial court unsustainably exercised its discretion in the division of the parties' debts.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

4